UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **PASQUALE LONGORDO**  Plaintiff, | CASE NO: 2:14-CV-10010-AC-LJM |
| v. | HONORABLE AVERN COHN  MAGISTRATE LAURIE MICHELSON |
| **CREDIT PROTECTION ASSOCIATES**  Defendant, | <u>PLAINTIFF'S TRIAL BRIEF</u> |

Plaintiff, Pasquale Longordo, submits the following as his Trial Brief:

**Plaintiff's Claims**.

Plaintiff filed this action against the Defendant CREDIT PROTECTION ASSOCIATES, L.P. ("Defendant" or "CPA"), alleging violations of several federal consumer protection laws. Specifically, Plaintiff alleges that Defendant violated the Fair Debt Collection Practices Act, the Telephone Consumer Protection Act.

The material facts of this case are not in dispute. Plaintiff is a resident of Michigan who subscribed to COMCAST Corporation for cable TV services. Plaintiff subsequently stopped paying the his cable bill after experiencing problems with his cable service and billing, overcharges and after more than several attempts, failing to resolve these issues directly with COMCAST. COMCAST first placed Plaintiff's account with the Defendant debt collector to collections in August 2012. Defendant contends that Plaintiff had two separate cable accounts with Comcast at two different addresses. Plaintiff claims he only had one account at his home

address and that it was because of Comcast's error that he did not receive all billing statements and experienced interruptions with his service as well as intermittent wi-fi problems from October 2011 through August 2012. In August 2012, Comcast remedied the problem with the cable modem which has been programmed incorrectly with a wrong residential address the first time. Comcast also replaced the modem and advised plaintiff that that they were taking care of everything. The problems did not resolve over the next few months and plaintiff terminated his service in December 2012

Comcast hired Defendant Credit Protection to collect a disputed cable bill. Defendant uses a computer-assisted dialing system to place calls to alleged debtors. Defendant has admitted to placing 47 auto-dialed calls to Plaintiff's cell phone between August 16, 2012 and November 26, 2013. In addition to the phone calls, Defendant left a number of pre-recorded voicemail messages on Plaintiff's cell phone. Defendant's voicemail messages stated that it was calling about an important business matter.

Plaintiff answered some of Defendant's calls and spoke with a live collector. Plaintiff advised Defendant that he did not owe Comcast any more money and to stop calling him and for CPA to straighten it out with Comcast. Plaintiff claims that Defendant violated the Telephone Consumer Protection Act (TCPA) when it called his cell phone using an automatic telephone dialing system, commonly referred to a "robo-dialer." Defendant admits to placing all its calls to Plaintiff using a computerized automated telephone dialing system. Plaintiff also claims that Defendant violated the TCPA when it left by using pre-recorded or / and artificial voice messages in calls to his cell phone.

Defendant contends that Plaintiff consented to receive autodialed calls and pre-recorded or artificial voice messages from Defendant by providing his telephone number to COMCAST.

Plaintiff is not sure and disputes this, but in any event, he revoked any alleged prior consent by requesting Defendant to stop calling him. Defendant continued to call his cellular telephone number using an automatic telephone dialing system, and continued to leave artificial or prerecorded voice messages on his cell phone after he expressly revoked any such consent by asking Defendant to stop calling him.

The Fair Debt Collection Practices Act or "FDCPA" expressly prohibits debt collectors from engaging in specific acts or practices.  The Fair Debt Collection Practices Act prohibits debt collectors from harassing, oppressing, or abusing any person in connection with the collection of a debt. Plaintiff claims that Defendant used harassing, unfair and deceptive practices to collect a disputed cable bill debt from him. Plaintiff disputed his Comcast bill for substandard service, continued billing errors, over charges and breach of contract for services and repeatedly told Defendant so.  Nonetheless, Defendant reported the Comcast debt as a delinquency to the credit reporting agencies and failed to indicate the debt was disputed. Defendant continued automated collection calls despite oral and written communications from Plaintiff asking defendant to stop calling him. Plaintiff seeks statutory damages under both state and federal law, with costs and legal fees. Specifically Plaintiff claims Defendant engaged in the following illegal activity:

a. Continued collection activity after written notification that consumer refuses to pay debt, or that consumer wants collector to cease communication in violation of § 1692 c(c).

b. Engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt in violation of 15 U.S.C. §1692d;

c. Causing a phone to ring repeatedly and engaged the Plaintiffs in telephone conversations, with the intent to annoy and harass in violation of 15 U.S.C. §1692d(5);

d. Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, in violation of 15 U.S.C. §1692(e)8;

 e. Employing various false representations or deceptive means to collect the debt in violation of 15 U.S.C. §1692(e)(10);

 f. The use of any false representation or deceptive means to collect or attempt to collect any debt, in violation of federal law in violation of 15 U.S.C. § 1692f;

 g. That CPA's violations of state law were willful.

<u>Plaintiff's FDCPA Harassment Claims, 15 U.S.C. 1692d and d(5)</u>.

The question of whether a debt collector engages in "harassing, annoying, or abusive" conduct is ordinarily an issue of fact for the jury. *Derricotte v. Pressler & Pressler, LLP,* No. 10-CV 1323, 2011 WL 2971540, at *3 (D.N.J. July 19, 2011); *Regan v. Law Offices of Edwin A. Abrahamsen & Associates, P.C.,* No. 08-CV-5923, 2009 WL 4396299, at *6 (E.D.Pa. Dec. 1, 2009).

<u>*Significantly, a collector's conduct following a verbal demand can also violate the FDCPA*</u> by constituting harassment or abuse. ("[T]he lack of a written request does not preclude a finding that the calls violated the FDCPA.") (citing *Bingham v. Collection Bur. Inc.,* 505 F.Supp. 864, 873 (D.N.D. 1981)). *See also Kerwin v. Remittance Assistance Corp., 559 F.Supp.2d 1117, 1124 (D.Nev. 2008)* (a genuine issue of material fact existed with respect to claimed violation of § 1692d where debt collector continued to call plaintiff even after being verbally informed it had the wrong number) (citing *Pittman v. J.J. MacIntyre Co. of Nevada,* 969 F.Supp. 609, 613 (D.Nev. 1997)). *Moore v. Firstsource Advantage, LLC* Not Reported in F.Supp.2d, 2011 WL 4345703 (W.D.N.Y. 2011).

**Plaintiff's FDCPA Deceptive Practices Claims, 15 U.S.C. 1692e(8) and e(10).**

"To determine whether a debt collector's practice is deceptive within the meaning of the Act, courts apply an objective test based on the understanding of the least sophisticated consumer.'"

*See Wilson v. Merchants*, 2010 WL 3488617 at * 4 (E.D.Mich.,2010) citing *Harvey v. Great Seneca Financial Corp.*, 453 F.3d 324, 331 (6th Cir.,2006).

*Brady v. Credit Recovery Co.*, 160 F.3d 64 (1st Cir. 1998). Section 1692e(8)'s requirement that a debt collector, when communicating credit information to a third party (here, a credit reporting agency), must communicate that a debt is disputed when the debt is known or should be known to be disputed applies when the disputed nature of the debt is conveyed orally and is not limited to written disputes.

*Acosta v. Campbell*, 2006 WL 146208 (M.D. Fla. Jan. 18, 2006). Allegations that the consumer's credit report did not show that the account was disputed stated a claim for the debt collector's violation of § 1692e(8), since whether the collector failed to communicate to the credit reporting agency that the debt was disputed, or did communicate such information but the credit reporting agency did not include the information, is a factual issue.

*Semper v. JBC Legal Group*, 2005 WL 2172377 (W.D. Wash. Sept. 6, 2005). Collector must communicate that a debt is disputed. The FDCPA does not give debt collectors the authority to determine unilaterally whether a dispute has merit.

*Sullivan v. Equifax, Inc.*, 2002 U.S. Dist. LEXIS 7884 (E.D. Pa. Apr. 19, 2002). Allegations, that the debt collector knowingly reported false information about the debt to thecredit bureau after it knew that the consumer disputed the debt and failed to inform the credit bureau that the debt was ''disputed,'' stated a claim under the FDCPA. ''Because reporting a debt to a credit reporting agency can be seen as a communication in connection with the collection of a debt, the reporting of such a debt in violation of the provisions of § 1692e(8) can subject a debt collector to liability under the FDCPA.''

*Finnegan v. Univ. of Rochester Med. Ctr.*, 21 F. Supp. 2d 223 (W.D.N.Y. 1998). Allegations that a debt collector's continued attempts to collect a debt it knew was disputed and failure to

communicate to a credit reporting agency that a known disputed debt was disputed (even though dispute was not in writing), state a claim for relief under the FDCPA for misrepresenting the amount and legal status of the debt and for attempting to collect amounts unauthorized by contract or law. Debt collector's misconduct also states a claim for relief under state tort of negligence for its failure to perform its collection contract with the creditor with due care.

**Plaintiff's TCPA Claims**

Plaintiff has alleged Defendant placed calls to his cellular telephone using an automatic telephone dialing system or a pre-recorded or artificial voice.  He further alleges the calls were not made for emergency purposes, and that he did not consent or effectively revoked any consent, to such calls. The TCPA prohibits any person from using an automatic telephone dialing system (ATDS), or an artificial or prerecorded voice, to make telephone calls to a cellular telephone number, except in an emergency or with the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii). Defendant has stipulated to its use of an ATDS when making calls to plaintiff as defined by the Act for purposes of this litigation. Defendant has admitted under oath that it placed 47 calls to plaintiff's cell phone. Defendant also admitted that it left numerous pre-recorded voice messages on plaintiff's cell phone Defendant also admitted in its testimony that it never scrubs the telephone numbers which it receives from Comcast to confirm the number is not a cell phone prior to inputting the numbers into its dialer.  The Defendant also admits it does not have anything in its possession showing that Plaintiff consented to being robo-dialed on his cell phone.

Defendant bases its defense upon its contention that Plaintiff expressly consented to the placement calls to his cellular telephone using an autodialer or prerecorded messages.  Congress has given the FCC authority to establish rules implementing the TCPA. In January 2008 the FCC

issued its rules regarding auto dialed calls to cellular telephones placed in the context of debt collection. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 1992 WL 690928, 71 Rad. Reg. 2d (P & F) 445, 7 F.C.C.R. 8752, 7 FCC Rcd. 8752 (F.C.C Oct 16, 1992) ("FCC Order") .

The FCC has explained as follows:

**We emphasize that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed. To ensure that creditors and debt collectors call only those consumers who have consented to receive autodialed and prerecorded message calls, we conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent.** The creditors are in the best position to have records kept in the usual course of business showing such consent, such as **purchase agreements, sales slips, and credit applications. Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent.** Similarly, a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. **Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.**

*Id.* at 564-65. (emphasis added). Prior express consent "is not an element of a TCPA plaintiff's prima facie case, **but rather is an affirmative defense** for which the defendant bears the burden of proof." *Grant v. Capital Mgmt. Servs., L.P.,* 449 F. App'x 598, 600 (9th Cir. 2011) (citing *In re Rules & Regs. Implementing the TCPA,* 23 F.C.C.R. 559, 565 (2008).

Another important issue will be whether Defendant violated the TCPA when it initiated the calls to Plaintiff or when Plaintiff received the calls. The 9th Circuit has ruled on this issue. *Satterfield v. Simon & Shuster, Inc.*, 569 F.3d 946, 954-55 (9th Cir. 2009). The Court noted that the TCPA did not define "call" and the Court resorted to the dictionary definition of "call" and found that "call" means to get in touch with someone by telephone or to *try* to get in touch with someone by telephone. Thus the violation of the TCPA occurs when Defendant initiates a call to Plaintiff's cellular telephone regardless of whether Plaintiff answers the call or even receives it.

The statutory language of the TCPA is silent with respect to the issue of revocation. It is Plaintiff's position that the TCPA permits consent to be revoked both orally and in writing. Plaintiff will offer evidence that he revoked any consent both in writing and orally in telephone conversations with CPA. The District Court in *Buchholz v. Valarity, LLC*, Case No. 4:13CV362, U.S. Dist. LEXIS 159239 (E.D. Mo. November 12, 2014) provided the following analysis of revocation of consent under the TCPA:

> **B. Oral Revocation of Consent under the TCPA**
> The TCPA is silent with respect to the issue of revocation. By contrast, section 1692(c) of the FDCPA explicitly permits revocation providing that if a consumer notifies a debt collector in writing that the consumer wishes the debt collector to cease further communications with the consumer, the debt collector shall not communicate further with respect to such debt. *See, e.g., Moore v. Firstsource Advantage, LLC,* No. 07-CV-770, 2011 WL 4345703, at *14 (W.D. N.Y. Sept. 15, 2011). Relying upon the TCPA's silence on the issue, some courts have held that the TCPA does not permit revocation, whether written or oral. *See, e.g., Kenny v. Mercantile Adjustment Bur.,* No. 10-CV-1010, 2013 WL 1855782, at *7 (W.D.N.Y. May 1, 2013) (holding that the TCPA creates a "narrow statutory right not to receive automated calls on a cellphone . . . [and that one who] voluntarily gives it up need not have an opportunity to change his mind later; he has withdrawn from the protection of the statute"); *Saunders v. NCO Fin. Sys., Inc.,* 910 F. Supp. 2d 464, 468-69 (E.D.N.Y. 2012); *Moore v.,* 2011 WL 4345703, at *14 (holding that a verbal request to cease debt collection calls to a cell phone is not sufficient to revoke prior express consent under the TCPA). In addition, some courts hold that consent may be revoked under the TCPA but that only written revocation will be effective. *Moltz v. Firstsource Advantage, LLC,* No. 08-CV-239S, 2011 WL 3360010, at *15 (W.D.N.Y. Aug. 3, 2011) (requiring that revocation of consent under the TCPA must be in writing); *Starkey v. Firstsource Advantage,* No. 07-CV-662ASR, 2010 WL 2541756, at *6 (W.D.N.Y. March 11, 2010) (holding that a verbal request to cease debt collection calls is sufficient under the TCPA). Taking into account the broad remedial objectives of the TCPA, other courts have concluded that oral revocation is available under the statute. *See Beal v. Wyndham Vacation Resorts, Inc.,* 956 F. Supp. 2d 962, 979-80 (D. Wis. 2013) (holding that the TCPA allows consumers to orally revoke their prior express consent); *Adamcik v. Credit Control Servs., Inc.,* 832 F. Supp. 2d 744, 750-51 (W.D. Tex. 2011) (internal citation omitted));Restatement (Second) of Torts § 892A cmt. i (holding that the TCPA allows consumers to revoke prior express consent to receive automated calls). And notably, the two Courts of Appeal that have addressed the issue of revocation under the TCPA have held that oral revocation of consent is consistent with the legislative history and broad remedial purposes of the statute, the common law principles relating to consent

and revocation[5], and the Federal Communication Commission's (FCC) analysis of the revocation issue.[6]*See Osorio,* 746 F.3d at 1254-56 [*Osorio v. State Farm Bank, F.S.B.,* 746 F.3d 1242 (11th Cir. 2014)]; *Gager,* 727 F3d at 271-72. **Upon review of each of the aforementioned precedents, this Court is persuaded by the reasoning of the Third and Eleventh Circuits with respect to the availability of oral revocation and concludes that Plaintiff's assertion that he orally revoked his consent to be contacted on his cell phone is cognizable as a matter of law under the TCPA.** *See Johnston v. USAA Fed. Sav. Bank,* No. 12-CV-02486-LTB-KLM, 2014 WL 5439965, at *3-4 (D. Colo. Oct. 27, 2014) (holding that "the weight of authority suggests that consent may be revoked under the TCPA and that if messages continue after consent is revoked, those messages violate the TCPA") (internal quotation omitted)).

(Emphasis added)

Plaintiff's TCPA claims are as follows:

a. CPA used an automatic telephone dialing system to make telephone calls to Plaintiff's cellular telephone number without plaintiff's prior express consent;

b. CPA also used an artificial or prerecorded to leave non-emergency voice messages with Plaintiff's cellular telephone voicemail service absent his prior express consent;

c. Plaintiff is entitled to no less than $500 per telephone call that CPA made to Plaintiff's cellular telephone number by using an automatic telephone dialing system;

d. Plaintiff is entitled to no less than $500 per voice message that CPA left with Plaintiff's cellular telephone voicemail service by using an artificial or prerecorded voice. 47 U.S.C. § 227(b)(3)(B);

e. CPA willfully or knowingly violated the TCPA in that CPA "had reason to know, or should have known, that [its] conduct would violate the statute." *Adamcik v. Credit.*, --- F. 2011 WL 6793976, at *9 (citing *Tex. v. Am. Blastfax, Inc.,* 164 F.Supp.2d 892, 899 (W.D.Tex. 2001);

f. "The Federal Communications Commission has interpreted 'willful or knowing' under the [TCPA] as not requiring bad faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute." *Adamcik v. Credit.*, --- F. 2011 WL 6793976, at *9 (citing *Blastfax*, at 892);

g. CPA's willful or knowing violations entitle Plaintiff to $1500 per autodialed call and $1500 per artificial or prerecorded voice message.

Plaintiff's requested damages are set forth in its Damage Specification.

Dated:   May 4, 2015

Respectfully submitted,
**REX ANDERSON PC**

By: */s/ Rex C. Anderson*
Rex C. Anderson, Esq.
(P47068)
Attorney for Plaintiff
9459 Lapeer Road
Davison, MI 48423
Telephone:  (810)653-3300
mied@rexandersonpc.com

# CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2015 I electronically filed a copy of the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

| | |
|---|---|
| STEVEN A. SIMAN (P20480) | NABIL G. FOSTER |
| Steven A. Siman, PC | JUSTIN M. PENN |
| Attorney for Defendant | AVANTI BAKANE |
| 3250 W. Big Beaver Road, Suite 344 | Attorneys for Defendant |
| Troy, MI  48084 | Hinshaw & Culbertson LLP |
| (248) 643-4700 | 222 N. La Salle St., Ste. 300 |
| | Chicago, IL  60601 |
| | (312) 704-3000 |

and I hereby certify that I have mailed by United States Postal Service the documents to the following non ECF participants:

Dated: May 4, 2015

*/s/ Rex C. Anderson*
Rex C. Anderson, Esq.
(P47068)
Attorney for Plaintiff
9459 Lapeer Road
Davison, MI 48423
Telephone:  (810)653-3300

mied@rexandersonpc.com